IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEADOWDALE APARTMENTS UNIT I, LLC et al., | )<br>)<br>) |
| Plaintiffs/Counter-defendants, | )<br>) |
| v. | )<br>) |
| AMERICAN HOUSING SOLUTIONS, | )<br>) |
| Defendant/Counter-plaintiff. | )<br>)<br>) |

No. 17 C 8399

Judge Virginia M. Kendall

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Meadowdale Apartments Unit I, LLC, Meadowdale Apartments Unit II, LLC, and Meadowdale Apartments Unit III, LLC, owners of three residential real estate developments, entered into three nearly identical purchase agreements with Defendant American Housing Solutions ("AHS"). Plaintiffs filed suit against AHS in the Circuit Court of Kane County, Illinois seeking a declaratory judgment that each of the three agreements terminated by its own terms and are of no further force and effect and that Plaintiffs did not default in any of its obligations under the agreements (Count I). (Dkt. 1-2). AHS removed the case and it was assigned to this Court. (Dkt. 1). AHS then filed two counterclaims against Plaintiffs seeking declaratory judgment that the agreements are still valid and enforceable (Count I) and alleging breach of contract and seeking an order of specific performance (Count II). (Dkt. 9). Plaintiffs moved for judgment on the pleadings in their favor and against AHS on all counts in their Complaint and AHS' Counterclaims. (Dkt. 16). For the following reasons, Plaintiffs' Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) [16] is denied.

1

# BACKGROUND

Plaintiffs own three separate apartment developments in Carpentersville, Illinois, each of which consists of 216 residential units. (Dkt. 1-2 at ¶ 6). On July 24, 2017, each of the Plaintiffs executed a Purchase Agreement and Escrow Instructions with AHS for one of the properties in Carpentersville (the "Agreements"). (*Id.* at ¶ 3, Exs. 1-3). The Agreements are governed by Illinois law and are identical in all respects material to the parties' allegations. (*Id.* at Exs. 1-3). Each agreement provides a 90-day period of investigation of the respective property and requires AHS' approval of the investigation as a condition to the Closing. (*Id.*). The terms of the Agreements related to the investigation and approval state, in relevant part:

> 6. Buyer's Investigation and Other Matters. ***On or prior to Ninety (90) days following the date of this Agreement ("Decision Date"), Buyer shall conduct the investigations of the Property*** described in Sections 6.1, 6.2, and 6.3. Buyer's approval of such investigations shall constitute a condition to the Closing. Such period of time is referred to as the "Feasibility Period."
>
> . . .
>
> 6.3 Property Documents. ***Buyer shall review on or before the Decision Date, all documents or materials in the possession of Seller, or reasonably available to the Seller***, issued or prepared in connection with the ownership, operation, management, use, and/or proposed development of the Property, including [list of documents] and any other reports of documents reasonably requested of the Seller by the Buyer, which the Buyer determines in their sole and absolute unfettered right is needed to evaluate the Real Property for acquisition, excluding the Excluded Documents (as defined below) (collectively, "Property Documents"). ***Seller shall deliver the Property Documents to Buyer or shall make the Property Documents available to Buyer for inspection.*** Buyer's failure to approve or disapprove the Property Documents by delivery of written notice thereof to Seller and Escrow Holder on or before the Decision Date shall be deemed Buyer's disapproval. . . .
>
> 6.4 Termination. ***If, on or prior to the Decision Date, Buyer fails, for any reason or for no reason, to deliver written notice ("Approval Notice") to Seller*** and Escrow Holder approving the Title Report described in Section 6.1 above, approving its investigation of the Property pursuant to Section 6.2 above, approving the Property Documents pursuant to Section 6.3 above, and approving the matters set forth in Section 6.4 with respect to the Wetlands, which approval or disapproval shall be in Buyer's sole and absolute discretion, ***then this***

2

> ***Agreement shall automatically terminate,*** in which event: . . . (b) Escrow Holder shall return the Initial Deposit to Buyer (regardless of whether or not Seller has signed a consent or cancellation instructions), less one-half (1/2) of Escrow Holder's cancellation fees and expenses and the Independent Consideration; . . . and (f) this Agreement shall terminate and neither party hereto shall have any further obligation or responsibility hereunder or liability of any nature or amount whatsoever to the other party hereunder, except those obligations that expressly survive the termination of this Agreement.

(*Id*. at Exs. 1-3 (emphasis added)).

The Decision Date marking the end of the 90-day Feasibility Period fell on October 23, 2017. AHS did not provide Approval Notice on or before October 23, 2017. (Dkt. 1-2 at ¶ 5). AHS alleges it was precluded from doing so because Plaintiffs failed to provide or otherwise make available all Property Documents, as required by Section 6.3, within the 90-day Feasibility Period. (Dkt. 9 at ¶ 37). Plaintiffs deny that they failed to meet any obligations under Section 6.3. (Dkt. 1-2 at ¶ 18; Dkt. 13 at ¶ 36). The parties disagree on the current status of the Agreements and which party, if any, is in breach.

Plaintiffs contend that, pursuant to Section 6.4, the Agreements automatically terminated by their own terms on October 23, 2017 when AHS failed to provide Approval Notice within the 90-day Feasibility Period. (Dkt. 9 at ¶ 19). They argue, therefore that the Agreements have no further force or effect. (*Id.*) Plaintiffs argue also that whether they provided all Property Documents is irrelevant because Section 6.4 unambiguously states that the Agreements "automatically terminate" if AHS does not provide Approval Notice by the Decision Date "for any reason or no reason at all." (Dkt. 1-2 at ¶ 17; Dkt. 16 at ¶ 5, 8-9).

AHS claims the Agreements are still valid and enforceable and that Plaintiffs are in breach. Specifically, AHS argues that the obligation to deliver or otherwise make available all Property Documents under Section 6.3 constitutes a condition precedent to AHS' obligation to provide Approval Notice under Section 6.4 and, because Plaintiffs failed to meet the condition

3

precedent in Section 6.3, Section 6.4 was never triggered. (*Id.* at ¶¶ 41-43). AHS further alleges that Plaintiffs breached the Agreements by failing to meet its obligations under Section 6.3 and seeks specific performance of the Agreements pursuant to Section 11.2, which states:

> 11.2 <u>Buyer's Remedies</u>. ***In the event Seller shall default under any of the terms and provisions of this Agreement on or prior to Closing, Buyer shall have the right***, but not the obligation, either (a) to terminate Buyer's obligations under this Agreement and the Escrow created hereby in which event Buyer shall be entitled to the immediate refund of the Deposit and any other funds deposited by Buyer into Escrow, including all interest earned thereon; or (b) ***enforce specific performance of this Agreement***, and Buyer shall not be entitled to recover any damages whether actual, direct, indirect, consequential, punitive or otherwise notwithstanding such failure or breach by Seller.

(Dkt. 1-2, Exs. 1-3 (emphasis added); Dkt. 9 at ¶¶ 49-50).

## **LEGAL STANDARD**

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay a trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Rule 12(c) permits a party to move for judgment on the pleadings after the complaint and answer have been filed by the parties." *Buchanan-Moore v County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing Fed. R. Civ. P. 12(c)). "A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). Therefore, the Court draws all inferences in favor of the non-moving party, *Buchanan-Moore*, 570 F.3d at 827, and will grant the motion for judgment on the pleadings "only when it appears beyond a doubt that the [non-moving party] cannot prove any set of facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008) (quoting *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007)). Under Rule 12(c), the court can consider documents attached to the pleadings, including letters and contracts." *Baker v. Potter*, 175 F. App'x 759, 762 (7th Cir. 2006).

**DISCUSSION**

The parties essentially disagree as to how the Agreements should be interpreted. Plaintiffs argue Section 6.4 is unambiguous and the Agreements automatically terminated upon failure of AHS to issue Approval Notice before the Decision Date, regardless of whether Plaintiffs complied with their obligations under Section 6.3. AHS presents two arguments in response: (1) that Section 6.3 provides a condition precedent to application of Section 6.4; and (2) that Plaintiffs breached Section 6.3 and the contract is ambiguous as to what relief AHS is entitled to for that breach. If it is possible that AHS can prove a set of facts to support either of these arguments, judgment on the pleadings is inappropriate.

**I.  The obligation imposed on Plaintiffs by Section 6.3 does not create a condition precedent but, rather, a promise on the part of Plaintiffs.**

Under Illinois law, a condition precedent is "some act that must be performed or event that must occur . . . before one party to an existing contract is obligated to perform." *Quantum Mgmt. Grp., Ltd. v. Univ. of Chicago Hosps.*, 283 F.3d 901, 906 (7th Cir. 2002) (quoting *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 633 (7th Cir. 1992)). Illinois courts "do not construe a contract to have a condition precedent unless there is 'language in the instrument [that] is unambiguous' or 'the intent to create such a condition is apparent from the face of the agreement.'" *Homeowners Choice, Inc. v. Aon Benfield, Inc.*, 938 F. Supp. 2d 749, 758 (N.D. Ill.), *aff'd*, 550 F. App'x 311 (7th Cir. 2013) (quoting *AAR Int'l, Inc. v. Vacances Heliades S.A.*, 202 F.Supp.2d 788, 800 (N.D.Ill.2002)). In other words, "a condition precedent must be stated expressly and unambiguously." *Liu v. T & H Mach., Inc.*, 191 F.3d 790, 798 (7th Cir. 1999). "Where it is doubtful whether words create a promise or an express condition, they are interpreted as creating a promise." *Id.* (internal quotations omitted).

Here, the plain language of the Agreements does not support AHS' contention that the obligation imposed on Plaintiffs in Section 6.3 of the Agreements constitutes a condition precedent to the triggering of Section 6.4. Sections 6.3 and 6.4 state in relevant part:

- "Buyer shall review on or before the Decision Date, all documents or materials in the possession of Seller, or reasonably available to the Seller . . ."

- "Seller shall deliver the Property Documents to Buyer or shall make the Property Documents available to Buyer for inspection. . . ."

- "If, on or prior to the Decision Date, Buyer fails, for any reason or for no reason, to deliver written notice ("Approval Notice") to Seller . . . approving the Property Documents pursuant to Section 6.3 above . . . then this Agreement shall automatically terminate."

No language in these provisions of the Agreements clearly conditions AHS' obligation to provide Approval Notice in order to avoid automatic termination after the 90-day period expires on Plaintiffs' delivery of the Property Documents. *See, e.g., 360networks Tenn., LLC v. Illinois Cent. R. Co.*, No. 05 C 3198, 2010 WL 2167394, at *4 (N.D. Ill. May 28, 2010) ("Conditions precedent are generally indicated by the terms 'on the condition,' 'subject to,' 'when,' 'as soon as,' or other similar terms."); *c.f. Cathay Bank v. Accetturo*, 66 N.E.3d 467, 478 (Ill. App. Ct. 2016) (emphasis added) (acceleration clause "shall give notice to [Accetturo] *prior to* acceleration" constituted contractual condition precedent creating mandatory duty to send a notice of acceleration prior to accelerating the mortgage). Had the parties intended the delivery of Property Documents to be a condition precedent to application of Section 6.4, they could have included such language. *See, e.g., id.* at *3. Instead, Section 6.4 contemplates AHS failing to provide Approval Notice "for any reason," which by its plain meaning is inclusive of Plaintiff failing to provide all of the Property Documents. Because it is doubtful whether Section 6.3 creates an express condition, the Court construes it as creating a promise. Therefore, Plaintiffs'

6

alleged failure to provide all Property Documents as required under Section 6.3 would not by itself preclude automatic termination under Section 6.4

## II. AHS sufficiently pleaded a breach of contract and the Agreements are ambiguous as to what relief AHS is entitled to for the alleged breach.

Under Illinois law, a plaintiff must allege four elements to state a claim for breach of contract: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). As discussed above, Section 6.3 provided a promise on behalf of Plaintiffs to provide all Property Documents to AHS. AHS sufficiently pleaded that Plaintiffs failed to fulfill this promise and, therefore, that Plaintiffs breached the Agreements. *See, e.g., 360networks Tenn., LLC*, 2010 WL 2167394, at *4 (nonfulfillment of a promise is a breach of promise). AHS also adequately alleged that as a result of Plaintiffs' breach, it was deprived of its right to conduct due diligence and make an informed decision as to whether to deliver the Notice of Approval.

The remaining question is whether AHS is entitled to a remedy for the alleged breach under Section 11.2 or if Section 6.4 terminated the contract and precludes such remedy. Under Illinois law, the primary objective in contract interpretation is to give effect to the intent of the parties. *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 792 (7th Cir. 2014) (citing *C.A.M. Affiliates, Inc. v. First Am. Title Ins. Co.*, 715 N.E.2d 778, 782 (Ill. App. Ct. 1999)). "If a contract is clear and unambiguous, the court must determine the intent of the parties solely from the plain language of the contract." *Id.* (citing *C.A.M. Affiliates, Inc.*, 715 N.E.2d at 782). However, if the contract is ambiguous, the Court can look to extrinsic evidence to determine the parties' intent. *See Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 380 (7th Cir. 2009).

7

Whether the contract is ambiguous is a question of law. *Id.* A contract is ambiguous where the language is "reasonably or fairly susceptible of more than one construction." *Interim Health Care of N. Illinois, Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000); *see also William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 769–70 (Ill. App. Ct. 2005) ("A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning."). There are two types of contractual ambiguity: intrinsic and extrinsic ambiguity. *Id.* "Intrinsic ambiguity exists when the agreement itself is unclear, and extrinsic ambiguity exists when a perfectly clear agreement is unclear when applied to the real-world context of the deal." *Id.*

The Court agrees with AHS that the language of the Agreements is ambiguous. Section 6.4 purports to terminate all liability for pre-Closing breaches while Section 11.2 purports to provide AHS remedies for Plaintiffs' pre-Closing breaches. Specifically, 6.4 states that the Agreement and "liability of any nature or amount whatsoever to the other party" automatically terminate upon AHS' failure to issue Approval Notice by the Decision Date. Such liability would include liability for a breach of Section 6.3 by Plaintiffs. However, Section 11.2 states that AHS "shall have the right to" certain remedies in the event of Plaintiffs' "default under any of the terms or provisions of this Agreement on or prior to Closing," which would include a breach of Section 6.3. Thus, the Agreement itself is unclear as to whether Plaintiffs can ever be held liable for a breach of Section 6.3. If not, Section 11.2 becomes superfluous. *See Aeroground, Inc. v. CenterPoint Properties Tr.*, 738 F.3d 810, 813 (7th Cir. 2013) (courts "must construe the contract as a whole, viewing each part in light of the others" and "seek to give effect to each clause and word used, without rendering any terms meaningless).

Because the contract is ambiguous as to whether it provides AHS remedies for the alleged breach, the Court can look to extrinsic evidence to determine the correct interpretation. It is possible that AHS can present such evidence supporting its breach of contract claim but it has not had a chance to do so yet. Therefore, judgment on the parties' claims is inappropriate at this stage.

## **CONCLUSION**

For the reasons stated above, the Court denies Plaintiffs' Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) [16].

_____
Hon. Virginia M. Kendall
United States District Judge

Date: May 17, 2018